38 C.C.P.A. (Patents)

In re HERITAGE.

No. 5732.

United States Court of Customs and Patent Appeals.

Dec. 5, 1950.

Rehearing Denied Jan. 22, 1951.

W. Bartlett Jones, Chicago, Ill., for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 1, 2, 3, 6 to 12, inclusive, and 14, of a patent applica-

tion, serial No. 457,830, filed September 10, 1942, for "Production of Hot-Bonded Fiber Felts," as unpatentable over prior art.

The Primary Examiner rejected the claims for want of invention over a Weiss patent, No. 1,336,402, dated April 6, 1920, in view of another Weiss patent, No. 1,461,337, dated July 10, 1923.

The Board of Appeals disagreed with the decision of the Primary Examiner and held that the Weiss patents were insufficient upon which to deny patentability to the involved claims. The board, however, cited a patent of Asplund, No. 2,047,170, dated July 14, 1936, and rejected the involved claims under Rule 139, new Rule 196, 35 U.S.C.A.Appendix, of the Rules of Practice of the United States Patent Office, as unpatentable over the Weiss patents in view of the disclosure in the Asplund patent.

Claims 1, 2, 3, and 6 to 9, inclusive, are method claims. Claims 10, 11, 12, and 14 are article claims. Two method claims were allowed. Claims 1 and 10 are considered illustrative of the subject matter and read as follows:

"1. The method of forming a bonded felted fiber structure which comprises felting fibers while including particles of finely divided heat-activatable solid water-insoluble adhesive, which particles become thoroughly distributed throughout the resulting felt, heating the felt in the presence of moisture held by the fibers while activating the adhesive by said heat, setting the adhesive while the fiber-parts covered by adhesive remain moist, and finally drying the entire fiber content including said fiber-parts while said adhesive remains set.

"10. A felted fiber structure having fibers characterized when dry by absorptiveness for the hereinafter mentioned heat-activated adhesive united by spot-bonds of heat-activated adhesive, the fiber-portions in contact with said bonds being substantially free from absorbed material of the bond, and the fiber-portions extending away from said bonds being free from material of the bond."

The application relates to the bonding of vegetable fibers into a uniform felted mat of various densities by means of heat and compression. The fibers are blown into a chamber wherein they disperse and settle on an endless belt extending over the bottom of the chamber in such fashion that there is produced a uniformly thick mat or web on the surface of the belt. Finely divided solid particles of water-insoluble fusible material are introduced with the fibers. The fusible material is melted to an adhesive condition by heat for the purpose of bonding fiber to fiber. The mat on the belt then consists of the fibers interspersed with particles of the bonding material. A spray of water is also introduced to moisten the fibers so that they are wet in the initial mat which is reduced to any desired thickness by compression. Sufficient heat is then applied to the mat so as to melt the fusible particles while they are in contact with the wet or moist fibers. Since the fusible material is water-insoluble, the activated bond does not penetrate nor spread upon wet fibers as it would if the fibers were dry. It is said that when thermoplastic materials are used the setting thereof is accomplished by a cooling process, and when thermosetting resinous material is employed it is set by continued application of heat. When the bonding particles are set they can not penetrate or spread upon dry fibers so that when the mat is dried the article is finished with the bonding particles spot-positioned in the mat.

The Weiss patent, No. 1,336,402, relates to the production of mats of fibrous material in the form of sheets, layers or batting. The patent discloses that the fibers are separated into a flocculent mass by air shredding and deposited in air upon a belt so that they are arranged in a loose, soft, resilient, heterogenous mass with the fibers extending in all three cubical dimensions and are treated with an adhesive to bind them together. The mass of fibers is then dried in its final form.

The Weiss patent, No. 1,461,337, relates to the making of wallboard. It discloses the use of fibrous material and a binding agent mixed in a shredder so that the fibers are intimately mixed with small

particles of binder. It is stated in the patent that "The fibrous material is substantially dry, preferably containing 10% or less of moisture."

The Asplund patent relates to the treatment of fibrous material. A process is disclosed in which defibrated wood chips are employed as raw material to produce a wood pulp with sizing material such as resin, wax or latex. It is said that the material employed may be "entirely devoid of free water" and further that the material may have "preferably 1-3 kg. or at the most, 7 kg. moisture per kg. dry material."

In one of appellant's reasons of appeal it is alleged that the board erred in citing as a new reference the patent to Asplund and using it in connection with the Weiss patents. That alleged error is not discussed in the brief for appellant and therefore is assumed to have been abandoned. In re McCabe, 90 F.2d 111, 24 C.C.P.A.,Patents, 1224; In re Krasnow, 166 F.2d 196, 35 C.C.P.A.,Patents, 939.

That the Board of Appeals may with propriety bring in a new ground of rejection has been well established by this court. In re Heritage, 153 F.2d 111, 33 C.C.P.A.,Patents, 783.

The examiner's statement is dated March 11, 1947, and appellant's brief before the Board of Appeals is dated August 21, 1947. On August 29, 1947, the examiner issued a "Supplemental Examiner's Statement." On September 5, 1947, counsel for appellant filed a supplemental brief in response to the supplemental statement and requested a ruling as to whether or not such statement is a reply under Rule 137, new Rule 194 of the Rules of Practice of the United States Patent Office. The decision of the board is dated June 14, 1948. On July 22, 1948, counsel for appellant filed before the board a request for reconsideration of its decision. Among other things, it was pointed out that the board in its decision did not indicate whether or not it had given consideration to the supplemental brief of appellant. In a decision of the board dated July 28, 1948, on appellant's petition for reconsideration, the board stated that such brief was not in order and

was not entered at the time of its original decision. The board stated that the "Supplemental Examiner's Statement," although so entitled, was obviously a reply to appellant's brief under Rule 137, new Rule 194. The board held that under the Rules, appellant had no right to reply to that statement. It did, however, enter and consider the supplemental brief because it had made its rejection of the involved claims under Rule 139, new Rule 196. On August 6, 1948, counsel for appellant filed another petition for reconsideration by the board and on October 14, 1948, the board denied the petition with respect to making any change in its decision.

It may be observed, from what has been herein set out, that in the course of the prosecution of this case in the Patent Office meticulous consideration has been given to the conclusions reached by the tribunals thereof.

As far as this court is concerned, since the supplemental brief has been entered and considered, the issue is exactly the same as it would have been had the brief been entered in the first instance. With respect to that phase of the controversy, it seems clear to us that an applicant is entitled to file a supplemental brief in response to any supplemental statement that is made by the examiner. To hold otherwise would put the applicant at a grave disadvantage for the reason that a supplemental statement, by its very nature, must contain material that had not been discussed in the examiner's original statement. If the examiner merely files a reply to the brief of an applicant, of course, in that event counsel for the applicant, under the Rules, could not be heard.

The only issue before us is whether or not the rejected claims are unpatentable over the Weiss patents, in view of the patent to Asplund.

The examiner denied patentability of the rejected claims on the theory that the fibers of the Weiss patents are inherently moist for the reason that it is not stated therein that the fibers are devoid of moisture. He held that although the Weiss patent, No. 1,336,402, did not disclose a

fusing bonding material, that the latter Weiss patent, No. 1,461,337, supplied that lack. The board held that while the earlier Weiss patent mentioned "a rather moist condition" of the pulp so that the fibers are readily separable, nothing appeared there to show such a degree of moisture as would prevent adhesion of the bonding material during its fusion. It stated that no suggestion is to be found in the later Weiss patent that the fibers are maintained in moist condition until the bonding material is placed upon them and that the patent is devoid of any teaching as to the amount of moisture the fibers must contain, and therefore the effect desired by appellant could not be produced. The board also found that the spraying of an adhesive solution after shredding in the method of the patent does not correspond to the disclosure of applying the bonding material to the moist fibers by appellant. With respect to the later of the Weiss patents, the board reached the same conclusion, whether that patent be considered alone or combined with the earlier Weiss patent. It pointed out that in the application of appellant there must be a moisture content in excess of the 10% mentioned in the later Weiss patent and that appellant, in his application, discusses the terms "moist" and "air dry" so as to exclude the reference showings. The board further observed that in the involved application the critical point of moisture is "well above 10%," and that the specific examples disclosed moisture content ranging from 100% to 300%. Therefore, the board could not support the reasoning of the examiner in his rejection of the involved method claims. It then stated that with respect to the involved article claims similar reasons were applicable. It held that a process had been disclosed and claimed by appellant differing substantially from the prior art relied on by the examiner and if weight be given to the disclosure of appellant then his process must produce a different product.

In the second decision of the board it was stated that the principle issue between the appellant and the examiner appeared to be in what constituted a "moist" mixture of fibers. It noted that in the disclosure of the Asplund patent a mixture is said to produce "a suitable degree of dryness" when the moisture content of the mixture is in a range which embraces that of appellant's disclosure.

Upon appellant's second request for reconsideration, the board in its decision referred to its rejection of the involved claims as it appeared in its original decision and stated that "It is the *amount* of water, not the particular *technical term* for the *condition* of the mixture, that is important herein." (Italics quoted.)

Counsel for appellant in his brief seeks to avoid the disclosure of the prior art by arguing that in appellant's process there is a drying step added to the process of the patentee Weiss. We find in the Weiss patent, No. 1,336,402, that "The mass of fibers *is next dried* and may thereafter be gently beaten to remove the uncemented fibers and produce a less 'dusty' mat and finally smoothed out, the last two steps being omitted when desired." (Italics ours.) It also appears in the Asplund patent that after a sheet has been formed, it is dried under a moderate pressure. Consequently, it is clear that patentability of the involved claims may not be predicated on the final step of drying.

A decision as to whether or not the moisture content disclosed in the Asplund patent is sufficient to warrant the rejection of the appealed claims in connection with the Weiss patents, is decisive of the issue here.

It is stated in the Asplund patent that the material used therein may be considered to be in a dry state when quantities of water vary between 1 and 3 kgs. for each kg. of material. It is further stated that moisture quantities above 7 kg. for each kg. of dry material ought not to be utilized. It seems to us that the latter ratio of moisture to dry material would result in a very wet mixture, as contended by counsel for appellant. Even so, the rejection by the board was not based on the statement that the material "may be considered to be in

a dry state," but rather on the positive disclosure of a process wherein the moisture content is in a range which includes that disclosed by appellant.

In one of the examples set out in appellant's application, the fiber and water are each of 100 parts by weight. In another example, the wood fiber has 100 parts by weight with the water 300 parts, and in a further example, dry wood fiber is said to have 100 parts by weight and the water content 270 parts. Therefore, it is clear that the water content range shown in the Asplund patent embraces the range disclosed in the application of appellant.

In our opinion the rejected claims were properly held to be unpatentable. All of the references are in the same art as is appellant's application. It seems to us that it would be obvious to one skilled in the art to have done as appellant has done, with knowledge of the cited references.

For the reasons hereinbefore set out the decision of the Board of Appeals is affirmed.

Affirmed.